644 A.2d 128

INSULATION CORPORATION OF AMERICA, PLAINTIFF–APPEL-
LANT, v. STEVEN BERKOWITZ, M.D., ROBERT DENNIS, M.D.,
AND ROY MITTMAN, M.D., DEFENDANTS–RESPONDENTS,
AND JEFFREY DONNER, ALVIN GOLDEN, AND JOHN MAC-
CHIAVERNA, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued May 10, 1994—Decided June 24, 1994.

Before Judges PRESSLER, BROCHIN and KLEINER.

*John J. Petriello* argued the cause for appellant (*Levy, Ehrlich & Kronenberg,* attorneys; *Mr. Petriello,* on the brief).

*James G. Aaron* argued the cause for respondents (*Schottland, Aaron & Manning,* attorneys; *Michael D. Schottland* and *Barth F. Aaron,* on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Defendants Steven Berkowitz, M.D., Robert Dennis, M.D., and Roy Mittman, M.D. are orthopedic surgeons. On or about September 10, 1987, they entered into a partnership agreement with Jeffrey A. Donner, Esq., a lawyer, Alvin H. Golden, an accountant, and John Macchiaverna, Jr., a builder, to form a partnership known as Sportsplex Associates. At about the same time, they also organized a corporation, Sportsplex Health and Fitness, Inc. The partnership was formed to acquire an existing health and racquet club and, directly or through the affiliated corporation, to develop a sports center which would include facilities where the doctors would practice sports medicine.

Plaintiff Insulation Corporation of America is in the business of installing insulation in sports facilities. In response to an inquiry

from Macchiaverna, it submitted a proposal to him dated August 30, 1988, to install insulation in a building owned either by Sportsplex Associates or by the affiliated corporation. The proposal specified a price of $53,486 for the materials and installation. The work was ordered and performed, but was not paid for. The trial court treated the insulation contract as having been entered into with Sportsplex Associates, the partnership, rather than with Sportsplex Health and Fitness, Inc., the corporation, and that ruling has not been contested on appeal.

Sportsplex Associates is bankrupt. Plaintiff sought to collect its debt from the partners. Initially, it sued only Donner, Golden, and Macchiaverna, who were the only partners with whom it had dealt. When plaintiff learned during the course of the litigation that Doctors Berkowitz, Dennis, and Mittman had been partners too, it amended its complaint to sue them also. Donner, Golden, and Macchiaverna have filed petitions in bankruptcy or for reorganization. They have not participated in this appeal.

Berkowitz, Dennis, and Mittman contend that the original Sportsplex Associates partnership, of which they were partners, was dissolved by an agreement executed by all six of the partners on or about April 15, 1988, entitled "Agreement Regarding Sportsplex Associates and Sportsplex Health and Fitness, Inc." They argue that they are therefore not liable because the debt was incurred without their authorization after dissolution, and the contract for insulation from which the debt arose was not an "act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution" within the meaning of *N.J.S.A.* 42:1–35(1)(a).

After a bench trial in the Law Division, Judge June Strelecki, J.S.C., agreed with the doctors. Plaintiff has appealed. It contends that when Macchiaverna ordered the insulation, he possessed and exercised the authority to bind the Sportsplex Associates partnership, whether or not this partnership had previously been dissolved, and that, since Berkowitz, Dennis, and Mittman

were partners, they are jointly and severally liable for the debt of the partnership.

Judge Strelecki determined that the partners' execution of the April 15, 1988 agreement effected the immediate dissolution of the original Sportsplex Associates partnership. For reasons which we discuss subsequently in this opinion, we have concluded that that interpretation of the agreement is correct. On that premise, Macchiaverna incurred the debt to Insulation Corporation of America after the dissolution of the partnership. The liability of Sportsplex Associates,[1] and therefore of its partners, is governed by those sections of the Uniform Partnership Act which deal with the authority of a partner to bind a partnership after dissolution.

There are two relevant sections, *N.J.S.A.* 42:1–33 and –35. Section 33 provides that, as between the partnership and persons who are not partners—the situation in which we are interested— the authority of a partner to bind a partnership after dissolution is governed by Section 35. That section of the Uniform Partnership Act as adopted in New Jersey reads as follows:

1. After dissolution a partner can bind the partnership except as provided in paragraph "3" of this section:

a. By any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution;

b. By any transaction which would bind the partnership if dissolution had not taken place, provided....

2. The liability of a partner under paragraph "1b" of this section shall be satisfied out of partnership assets alone when such partner had been prior to dissolution.

a. Unknown as a partner to the person with whom the contract is made; and

---

[1] Strictly speaking, we are considering the authority of Macchiaverna to bind Sportsplex Associates, the original partnership created by the agreement of September 10, 1987. If, as we have determined, the April 15, 1988 agreement dissolved the partnership, there was a successor partnership, also known as Sportsplex Associates, which was created when three of the partners continued the Sportsplex business after April 15, 1988. However, Berkowitz, Dennis, and Mittman were not partners of that successor partnership, and they are not affected by Macchiaverna's authority to bind that partnership.

b. So far unknown and inactive in partnership affairs that the business reputation of the partnership could not be said to have been in any degree due to his connection with it.

3. ....

4. ....

[*N.J.S.A.* 42:1-35.]

None of these provisions of *N.J.S.A.* 42:1-35 authorized Macchiaverna to contract with plaintiff on behalf of Sportsplex Associates in a way that would make Berkowitz, Dennis, and Mittman personally liable to satisfy the debt of the partnership to Insulation Corporation of America out of their non-partnership assets. First of all, subparagraph "(1)(a)" is inapplicable because the contract with Insulation Corporation of America does not meet either of its conditions. The contract was not one for "completing [a] transaction[ ] unfinished at dissolution" since the proposal which resulted in the contract was not submitted to Macchiaverna until on or about August 30, 1988, long after the April 15, 1988, date of the dissolution agreement. As the trial judge found on the basis of evidence in the record whose adequacy is undisputed, the contract was not "appropriate for winding up partnership affairs" because

[a]n improvement such as installing insulation in this case does not constitute an action for the purpose of winding up partnership affairs.... Also, there is no evidence before the court that the application of insulation resulted in an increased purchase price for the property or conferred any other benefit for the purposes of winding up.

Subparagraph "(1)(b)" does not provide the authorization to bind the partnership because the facts of this case do not meet the conditions of either subparagraph "(1)(b)(I)" or of "(1)(b)(II)." If Sportsplex Associates was dissolved on April 15, 1988, subparagraph "(1)(b)(I)" is inapplicable because plaintiff did not "extend credit to the partnership prior to dissolution [without] knowledge of the dissolution;" subparagraph "(1)(b)(II)" is inapplicable because plaintiff did not "know[ ] of the partnership prior to dissolution...."

Paragraphs "3" and "4" of *N.J.S.A.* 42:1-35 are also entirely inapplicable to the present case. Subparagraph "(3)(a)" deals with

a partnership which is dissolved because carrying on the business of the partnership would be unlawful; there is no suggestion that the business of Sportsplex Associates was illegal. Subparagraph "(3)(b)" deals with a partner who has become bankrupt and then purports to act on behalf of the partnership; Macchiaverna did not become bankrupt until after he entered into the contract with Insulation Corporation of America. Subparagraph "(3)(c)" deals with a partner who has no authority, except by estoppel, to wind up partnership affairs; in the present case, the April 15, 1988, agreement conferred authority on Macchiaverna, Golden, and Donner to wind up partnership affairs. Paragraph "4" deals with the liability of a person who, after dissolution, represents himself, or consents to someone else's representing him, to be a partner engaged in carrying on business; Berkowitz, Dennis, and Mittman did not so represent themselves, or permit other to represent them, after April 15, 1988.

■ Therefore, if the trial judge was correct that the execution of the April 15, 1988 agreement dissolved the original Sportsplex Associates partnership of which these defendants were partners, then Macchiaverna did not have authority to bind Sportsplex Associates in a way that would impose liability for the insulation contract on Berkowitz, Dennis, and Mittman. If, however, that agreement did not dissolve the partnership, all of the defendants continued to be partners until the bankruptcy of the partnership, which occurred after the formation of the contract with Insulation Corporation of America, and they would be liable for the debts of the partnership after the exhaustion of partnership assets. *N.J.S.A.* 42:1–15; *Seventy–Three Land, Inc. v. Maxlar Partners,* 270 *N.J.Super.* 332, 335–36, 637 *A.2d* 202 (App.Div.1994). We turn therefore to an interpretation of the April 15, 1988 agreement.

After enumerating the financial obligations which the partnership, the affiliated corporation, and the individual partners incurred for the benefit of their joint enterprise, the agreement recites that Berkowitz, Dennis, and Mittman "have requested that

they be allowed to terminate their ownership interests in both the Partnership and the Corporation and to be excused from all liability for the Debt," and that Donner, Golden and Macchiaverna "have agreed to honor the requests of [Berkowitz, Dennis, and Mittman] in this regard pursuant to the provisions of this agreement." The reason for the doctors' wanting to disassociate themselves from the partnership business is disputed, but immaterial. Berkowitz, Dennis, and Mittman clearly wanted to get out, and their partners were willing to have them go.

The agreement specifies in some detail the steps to be taken by Donner, Golden, and Macchiaverna to relieve the doctors from any continuing liability or interest in the partnership by taking

those steps delineated in this Paragraph 1 immediately below so as to enable [Berkowitz, Dennis, and Mittman] to terminate their interests in the Partnership and the Corporation without incurring any loss or achieving any gain therefrom (except as otherwise expressly provided for in this Agreement) and to be indemnified, held harmless and ultimately removed from all liability for the Debt on or before June 9, 1988 (the "Closing Date"). In the event that [Donner, Golden, and Macchiaverna] fail[ ] to remove [Berkowitz, Dennis, and Mittman] from the aforesaid liabilities on or before the Closing Date, [Donner, Golden, and Macchiaverna] and [Berkowitz, Dennis, and Mittman] shall list the Property for sale at its then fair market value, and the parties mutually agree to cooperate with each other in order to sell the Property as expeditiously as possible.

The enumerated actions which were to be taken by Donner, Golden, and Macchiaverna all involved arranging to substitute other obligors in place of Berkowitz, Dennis, Mittman, and other financing arrangements in place of those for which the withdrawing partners shared liability. If the property was sold at a profit before June 9, 1988, Berkowitz, Dennis, and Mittman would not be entitled to any share. The agreement also provides that when they were relieved from all liabilities and were repaid $36,000 which they had apparently advanced for the partnership or the corporation, they would "assign and transfer all of [their] right, title and interest in and to the Partnership and the Corporation subject to liabilities as of the Closing Date...."

The Uniform Partnership Act defines "dissolution of a partnership" as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distin-

guished from the winding up of the business." Uniform Partnership Act § 29, 6 *U.L.A.* at 364 (1969); *N.J.S.A.* 42:1–29; *Wilzig v. Sisselman,* 182 *N.J.Super.* 519, 525–27, 442 *A.*2d 1021 (App.Div. 1982). As explained by the official comment to this section, "[D]issolution designates the point in time when the partners cease to carry on the business together; termination is the point in time when all the partnership affairs are wound up; winding up, the process of settling partnership affairs after dissolution." Official Comment, Uniform Partnership Act § 29, 6 *U.L.A.* at 365 (1969); *see Ramseyer v. Ramseyer,* 98 *Idaho* 47, 558 *P.*2d 76, 79 (1976) (term "dissolution" as used in partnership law is a legal term of art; it does not refer to the other steps in the process of completing and finishing a partnership relationship).

Dissolution of a partnership, as defined by the Act, may be effected "[b]y the express will of all the partners who have not assigned their interests or suffered them to be charged for their separate debts, either before or after the termination of any specified term or particular undertaking." Uniform Partnership Act § 31(1)(c), 6 *U.L.A.* at 376 (1969); *N.J.S.A.* 42:1–31(1)(c). The April 15, 1988 agreement among the partners in the present case expressed the "will" of all of the partners of Sportsplex Associates to effect an immediate "change in the relation of the partners caused by [one group of] partner[s] ceasing to be associated in the carrying on as distinguished from the winding up of the business." Uniform Partnership Act § 29, 6 *U.L.A.* at 364 (1969); *N.J.S.A.* 42:1–29. By its express terms, once that agreement was signed, they were no longer associated with one another for the purpose of developing, renting and operating a sports center. One group was left to "wind up" the business of the partnership in the prescribed manner and then to develop, rent, and operate the sports center for themselves as a new Sportsplex Associates partnership. The other group obtained a separation from the business, indemnification, and the expectation of being relieved of liability to creditors. Consequently, upon the execution of that agreement, the partners accomplished the "dissolution" of their

partnership as that term is defined by *N.J.S.A.* 42:1–29.[2]   *See Stump v. Tipps,* 120 *Cal.App.*2d 418, 261 *P.*2d 315, 317 (1953) (agreement by which one partner was to receive business and all assets of firm and other partner completely withdrew from active partnership affairs constituted a partnership dissolution).

Since the original Sportsplex Associates partnership was legally dissolved by the April 15, 1988 agreement, the obligation which Macchiaverna purported to incur on behalf of Sportsplex Associates is not an obligation of defendants Berkowitz, Dennis and Mittman.   The judgment of no cause for action which was entered in their favor is therefore affirmed.

---

[2] To refute the conclusion that the April 15, 1988 agreement effected the immediate dissolution of the partnership, plaintiff Insulation Corporation of America emphasizes the indisputable fact that, as defendants Berkowitz, Dennis, and Mittman repeatedly asserted during the proceedings arising from the bankruptcy of Sportsplex Associates, they continued to be partners in dissolution. However, as the statutory definition of "dissolution" indicates, their continuing as partners in liquidation is entirely consistent with the partnership having been "dissolved."